IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ulious Brooks, | ) | Case No. 1:07cv1265 |
| | ) | |
| Plaintiff, | ) | Judge Christopher A. Boyko |
| | ) | |
| v. | ) | **Report and Recommendation** |
| | ) | |
| Stuart Hudson, Warden, | ) | Magistrate Judge James S. Gallas |
| | ) | |
| Defendant. | ) | |

*Introduction:*

Petitioner Ulious Brooks is a prisoner in state custody who has filed a pro se petition for

habeas corpus relief from his state court conviction for voluntary manslaughter with a firearm

specification pursuant to 28 U.S.C. § 2254.[1]  Also, the trial court found Brooks guilty of having a

weapon while under disability, a count that was not tried to the jury.  Brooks was originally

indicted for murder with a firearm specification.  Following trial, the jury found Brooks not

guilty of murder, but found him guilty of the inferior offense of voluntary manslaughter with a

firearm specification.  Brooks ultimately was sentenced to thirteen years in prison plus five years

of post-release control.  In his petition, Brooks does not challenge the sufficiency of the evidence

supporting conviction.[2]

---

[1]Brooks filed his petition pro se, but later obtained counsel and counsel filed a Traverse
on Brooks' behalf.

[2]The Eighth District Court of Appeals reversed the trial court's judgment which imposed
post-release control and a $20,000 fine as part of Brooks' sentencing and affirmed the judgment
of the trial court in all other aspects.  *See State v. Brooks*, 2005 WL 1648602, *10-11 (Ohio App.
8th Dist. 2005) (reversing sentence); *In re Ohio Criminal Sentencing Statute Cases*, 109 Ohio
St.3d 313, 318 (Ohio 2006) (remanding for re-sentencing in light of *State v. Foster*).  *See* Ex. 16,
*State v. Brooks*, Case No. 05-1671, Judgment 103-607 (May 3, 2006, Ex. 17 C.P. Ct. Journal
Entry June 19, 2006).

*Facts:*

Normally, a state court's factual findings are binding and "shall be presumed to be correct," placing the burden on petitioner to "rebut[ ]the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), cert. denied, 527 U.S. 1040, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999).  The Eighth District Court of Appeals of Cuyahoga County, Ohio summarized the trial testimony as follows:

> Sasha Sanford was the girlfriend of Tyrone King. On the night before King's murder, Sasha Sanford had a confrontation with Brooks.  Brooks allegedly attempted to strike her and they tussled. After the incident, Jason Sanders, Tyrone King's brother and Sanford's friend, arrived at the apartment and was told of the incident. Sanders confronted Brooks and several other males in the hallway of the apartment building.

> Again, a tussle ensued. Sanford claimed $500 of her money was dropped during the fight and one of the men retrieved the money.

> The next day, Tyrone King and Sanders encountered Brooks and Samuel Adams.  The four men fought. Sanford, who was observing the fight from a short distance away, saw Brooks shoot King.  She heard a single gunshot and saw King fall on top of Brooks. King yelled to Sanders to get the gun out of Brooks' hand. Sanders pried the gun from Brooks' hand and began hitting him in the face with the butt of the gun. Brooks managed to get from under King and ran into a nearby store.  King died at the hospital.

> [Sanders] arrived at the apartment where the confrontation between Brooks and Sanford had taken place. He tried to intervene and to defuse the situation, but the situation escalated. There were several men in the hallway, including Brooks. One man had a shotgun and fired it in the air. Sanders and Sanford retreated. Later that night, Sanders called King and relayed everything that had transpired and they agreed to meet the next day to confront Brooks.

> Sanders testified that the next day he and King encountered Brooks and Samuel Adams. While he was fighting Adams, he heard a single gunshot and when he turned around, he saw his brother lying on top of Brooks.  King then told Sanders that Brooks had shot him.

-2-

Sanders admitted that he did not see Brooks shoot King.  Sanders denied taking the gun out of Brooks' hand and denied that the gun belonged to King. Finally, Sanders testified he handed the gun to L.C. Robinson to give to the police.

Samuel Adams, Brooks' cousin, stated Sanford knocked on [Brooks'] aunt's apartment door. When Brooks answered the door, Sanford cursed at him, and Brooks responded by slamming the door in her face. A few minutes later, Sanford returned and a heated exchange took place between her and Brooks. Later, Sanders arrived and a fight broke out in the hallway.  During this time, Sanford, who was boasting about making money, threw about $500 in the hallway.

After the fight was over, Sanders spoke with Brooks' aunt, Elizabeth Bailey.  Sanders told her that everything was over and settled.

The following day, Adams and Brooks walked to the corner store.  While they were walking, Adams heard someone say "hey, Ulious, come here, let me have you."  When Adams and Brooks turned around, they saw King and Sanders. Adams and Brooks asked them why they wanted to talk to them, at which point, Sanders swung at Adams.  A tussle erupted with Adams and Sanders fighting each other.  In the meantime, while Brooks was tussling with King, Adams heard a gunshot.  Adams ran to his aunt's apartment.

Vicky Robinson stated Brooks confronted Sanford and threatened to punch her teeth out for having a smart mouth.  The confrontation resulted in the aforementioned fight in the hallway of the apartment building.

The following day, while Robinson was returning from the grocery store, she saw a crowd gathered near her apartment.  An ambulance and police squad car were present.  As she approached, Sanford told her that Brooks had shot King. Robinson returned to her apartment a few minutes later.  Her son L.C. gave her a gun and told her to turn it in to the police.  Robinson placed the gun in a clothes hamper.

Robinson stated she saw Brooks with a gun the previous night.  However, she was not sure that it was the same gun her son had given her.  Finally, Robinson testified she believed that the argument between Brooks and Sanford was over a bad batch of marijuana Brooks had sold Sanford.

Detective Jeffrey Sampson of the Cleveland Police Department stated he took Brooks' statement at the police station on March 15, 2003.  In the statement, Brooks admitted to cheating Sanford on March 12, 2003, when he sold her six bullets instead of the twelve they agreed to for $30. On March 13, 2003, when

Sanford discovered Brooks had cheated her, she threatened him. Brooks stayed at his cousin's house, because he knew Sanford had a gun.

Books also related in his statement that the following day, while walking to the store with his cousin, two men yelled to them. As he turned around, the two men ran up to them and wanted to talk. Both men punched Brooks. Brooks started to run, but one of the men grabbed Brooks by the collar of his sweatshirt and proceeded to hit him. Brooks turned around, saw a gun in his face, and grabbed the gun. After the scuffle, one of the men took the gun from Brooks, who then fell to the ground. The men started stomping, kicking, and hitting Brooks. Both men hit Brooks with the gun.

Further, with a gun pointed at him, Brooks crawled into a nearby store. Brooks then heard two gunshots and the men said "let's go." The two men ran in the direction of East 109th Street and Brooks ran in the opposite direction.

Brooks denied carrying a gun on March 14, 2003, and denied shooting King. When presented with photographs, Brooks identified Sanders as one of the two men he had encountered on the street. However, Brooks did not identify King as the other man. When asked if he could identify four bullets that were taken out of the gun submitted as evidence, Brooks claimed they looked like bullets he sold to Sanford.

The defense called Melinda Curry as their sole witness. According to Curry, on March 14, 2003, she was driving in her car along with her sister. While at a stop sign, she saw a crowd of men beating a man who was laying on the ground. She heard two gunshots and then saw a man running with a gun in his hand and a girl following behind. She called the police and proceeded on her way, but decided to return in order to talk to the police. She could not recall what she told the police.

*State v. Brooks*, No. 83668, 2005 WL 1648682, **1-3 (Cuyahoga Cty. App. July 14, 2005),

reversed in part by *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 847

N.E.2d 1174 (Ohio 2006).

### Standard of Review:

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub.L.

No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Respondent has conceded that there are no issues of untimeliness, failure of exhaustion, or procedural bar in this case. The undersigned agrees that the petition is timely and that Brooks has exhausted his state remedies regarding the three grounds he presents under 28 U.S.C. § 2254 for federal habeas corpus relief. Accordingly, the undersigned will review the merits of Brooks' petition.

Federal habeas corpus is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'"  *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), quoting *Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Under 28 U.S.C. § 2254 Congress imposed constraints on the jurisdictional powers of review of state court adjudications of the merits. As a result, a petitioner must demonstrate that the state court's decision: (1) "resulted in a decision that was contrary to"; (2) "or involved unreasonable application of"; (3) "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Under the "contrary to" standard of review, "[a] state court's decision is 'contrary to' [ ] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting *Williams v. Taylor*, 529 U .S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

Under the "unreasonable application" standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). The unreasonable application of Supreme Court precedent must, however, be "objectively" unreasonable. *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins*, 539 U.S. at 520-21.  The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000), citing *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir.2000), cert. denied, 121 S.Ct. 808 (2001). When the state court has rendered a decision, the federal reviewing court may not grant the writ in its "independent review of the legal question." *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).

**Merits:**

**Ground One: When a juror states repeated and unequivocally that she or he be fair and impartial to the State and the defendant, the trial judge cannot remove her 'for cause' and removing a juror 'for cause' (over objection) violates the 6th and 14th Amendments of the U.S. Constitution.**

In his first ground for relief, Brooks contends that the trial court violated the Sixth and Fourteenth Amendments to the United States Constitution when the trial court excluded a juror for cause after the prospective juror stated she could be fair and impartial.  With respect to this first ground for habeas corpus review, the state appellate court decision did refer to an appropriate decisional basis (*Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d

841 (1985)) from the Supreme Court which is sufficient to trigger a presumption that "state

courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360,

154 L.Ed.2d 279 (2002).  "§2254(d) requires that 'state court decisions to be given the benefit of

the doubt.'" *Holland v. Jackson*, 542 U.S. 649, 654, 124 S.Ct. 2736, 2739, 159 L.Ed.2d 683

(2004), quoting *Visciotti*, 537 U.S. at 24, 123 S.Ct. at 360.

Accordingly, since the state decision acknowledged the correct factors for adjudicating

this ground, this matter has progressed past the issue of whether the state court decision was

"contrary to" clearly established Federal law and Brooks must show an "unreasonable

application" of clearly established Federal law.  *See Rompilla v. Beard*, 545 U.S. 374, 380, 125

S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005);*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct.

1495, 146 L.Ed.2d 389 (2000); *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535,

156 L.Ed.2d 471 (2003). The unreasonable application of Supreme Court precedent must,

however,  be "objectively" unreasonable. *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins,*

*supra*, at 520-21.  When the state court has rendered a decision applying the correct federal

standard, the federal reviewing court  may not grant the writ in its "independent review of the

legal question." *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144

(2003).  Brooks must show that the state decision applied *Wainwright* to the facts of the case in

an objectively unreasonable manner.  *See Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843,

152 L.Ed.2d 914 (2002). Only when there has been an "unreasonable application" of clearly

established federal law is the federal court free to resolve the claim independently.

The proper standard of review to be applied in a non-capital case on habeas corpus

review is a presumption of correctness to a state judicial finding of juror impartiality.  *See*

*Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).[3]  "In determining whether a juror is biased, 'deference must be paid to the trial judge who sees and hears the juror.'" *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003), quoting *Witt*, 469 U.S. at 426, 105 S.Ct. 844.  "Even before AEDPA, the trial court's finding that a juror was impartial was entitled to a presumption of correctness, rebuttable only upon a showing of clear and convincing evidence." *Id.  See* 28 U.S.C. § 2254(e)(1); *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (noting that juror partiality is a question of historical fact).  "The question is not whether the trial judge was wrong or right in his determination of impartiality, but merely whether his decision was 'fairly supported by the record.'" *Id.*, *citing  Witt*, 469 U.S. at 433, 105 S.Ct. 844 (internal quotations omitted).

The state appellate court set forth the pertinent facts regarding the excluded juror as follows:

> During voir dire, one of the prospective jurors informed the court that she had a son in prison for a homicide.  The juror stated her son was prosecuted ten years earlier and that the Cuyahoga County Prosecutor's Office and the Cleveland Police Department handled the case.  Additionally, she stated that upon the advice of his attorney, her son pled guilty to aggravated murder and was sentenced to a prison term of 25 years to life.  Further, the following exchange took place during voir dire:
>
> "State: Were you satisfied with the result in your son's case?
> Juror: No, I wasn't.
> State: Okay. Do you think he was treated unfairly?
> Juror: Absolutely.
> State: And do you think he was treated unfairly by the judicial system or the-the police, the prosecutors, by whom?
> Juror: The judicial system and the prosecutors." Tr. at 305.
>
> Thereafter, an in-camera proceeding was held in chambers with the juror.  The

---

[3]*Witt's* holding regarding juror exclusion applies equally to non-capital cases.  *See Merced v. McGrath*, 426 F.3d 1076, 1080 (9th Cir. 2005).

juror stated that she and her mother were misled by the defense attorney in advising her brother to enter a guilty plea.  She stated she harbored no ill will against the prosecutor's office or towards the Cleveland Police Department. Finally, the juror stated she had no problem sitting as a juror on a murder trial and that she could separate her son's case from the one at hand.

Subsequently, the State moved to remove the juror for cause on the basis that she seemed to harbor resentment toward the judicial system. Defense counsel objected on the basis that the juror never said she could not be fair and impartial. However, in removing the juror for cause, the trial court stated the following: "But she has indicated that she doesn't think that the system treated both her–her nor her son–she thinks somebody misled both her and her mother into tricking her son and as a result of that her son has been taken away from her and her family for the last ten years and that she doesn't think that it's fair.  So do you really think that somebody with that thought pattern could be a fair juror ..." Tr. at 315.

*State v. Brooks*, No. 83668, 2005 WL 1648682, **1-3 (Eighth Dist. Ct. App. July 14, 2005).

Based on the foregoing, the Eight District appellate court held that:

Here, after considering defense counsel's objection to the State's challenge for cause, the trial court determined that it was inappropriate for the juror to sit in the present case, because she believed that the judicial system failed her son.  The trial court had the opportunity to observe the prospective juror's demeanor, voice inflection and facial expression, and thus, made the decision to exclude the prospective juror for cause. Under these circumstances, no abuse of discretion on the part of the trial court is apparent.  Accordingly, Brooks' second assigned error is overruled.

*Id.* at *5 (citations omitted).

Brooks has not demonstrated that the state court decision was an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Although a prospective juror's bias need not be proved with unmistakable clarity, there will be times when the trial judge is "left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law," and the trial judge's resulting determination is entitled to deference from reviewing courts.  *Wainwright v. Witt*, 469 U.S. 412,

425-26.[4]

Brooks cites the Supreme Court's pronouncement in *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), that a juror is qualified if she approaches the case with an "open mind."  In *Irwin*, the Court held that the jury, which included eight persons who had expressed their opinion as to defendant's guilt during voir dire, where the crime had extensive newspaper, radio and television coverage preceding trial, did not meet constitutional standards of impartiality, and the conviction of murder and sentence of death were void.  *Id.* at 728.  "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.**"**  *Id.* at 722.  *Irwin* addressed the due process concerns in the context of empaneled jurors who expressed preconceived notions about defendant's guilt. Preconceived notions of guilt are not at issue here.  What is in issue is the trial court's exclusion of a juror who the defendant believes should have been empaneled.

Finally, for Brooks to succeed on a claim for habeas relief based upon the exclusion of a juror the Sixth Circuit has explained that a petitioner must show that the selected jury was biased:

> When reviewing a trial court's dismissal of potential jurors for cause, this court must determine whether the trial court's decision prevented the empaneling of an impartial jury.  It is not enough for the defendant to show that the decision to exclude the two jurors was improper.  He also must show that the jury selected was biased.

*Hill v. Brigano*, 199 F.3d 833, 844 (6th Cir. 1999).  Although in his Traverse, Brooks makes a cursory statement that he "was denied a fair and impartial jury with a fair cross section of the

---

[4]The United States Supreme Court explained in *Greene v. Georgia*, 519 U.S. 145, 117 S.Ct. 578, 136 L.Ed. 507 (1996) that the *Witt* presumption of correctness to the state court's findings of juror bias is not necessarily controlling on state appellate review.  But state appellate courts may, as a matter of law, adopt the *Witt* standard of review.  *Id.*  510 U.S. at 146.

community," his argument is exclusively based on the exclusion of one juror and not on the jury that was empaneled.  Without a showing that his jury was biased, merely arguing that the trial court erred in dismissing a prospective juror for cause is insufficient to warrant habeas relief. *Id.* at 844-45.  Therefore, Brooks' first claim is without merit.

> **Ground Two: The 14th Amendment of the U.S. Constitution requires a jury instruction on the defense of accident when there is evidence to support it and when the State fails to object to the closing argument that the shooting was accidental.**

In his second ground for relief, Brooks contends that the trial court's refusal to give the jury an instruction on accident as requested by his counsel was an error of constitutional magnitude.  When presented with this argument on direct appeal, the state appellate court did not analyze the issue in terms of United States Supreme Court precedent.  Thus, this Court must consider whether the decision was "contrary to" clearly established Federal law.

Where, as here, the issue is a trial court's refusal to instruct the jury on a particular issue, the petitioner must demonstrate that the failure to instruct "had a substantial and injurious effect or influence in determining the jury's verdict and resulted in actual prejudice." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir.1999) ((citing *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir.1999), cert. denied, 119 S.Ct. 2340 (1999)(quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A petitioner alleging error in a jury instruction must establish not only that the instruction was undesirable or erroneous, "but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).  The issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396. *See also Henderson v.*

-11-

*Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)(lack of a particular instruction must impugn fundamental fairness of trial). If petitioner can make such a showing then he "will have satisfied the 'unreasonable application' standard required by § 2254 of AEDPA and would be entitled to habeas relief." *Duncan v. Bobby*, No.1:07cv839, 2008 WL 111229, *5 (N.D. Ohio Jan. 8, 2008).

"The starting point for this due process analysis is whether the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law." *Gimotty v. Elo*, 40 Fed. Appx. 29, 2002 WL 745801, *3 (6th Cir. Apr. 25, 2002), citing *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir.2001). "In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional." *Id.*, citing *Davis*, 270 F.3d at 123 n. 4.

A defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). However, a court need not instruct the jury on a defense if the evidence is insufficient as a matter of law to support the defense. *United States v. Bailey*, 444 U.S. 394, 412-415, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). *See also United States v. Morgan*, 216 F.3d 557, 566 (6th Cir.2000)(instruction which lacks evidentiary support or is based on speculation should not be given); *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir.1990)(citing *Bailey* in holding that district court did not err in refusing to instruct jury on defense of justification if evidence could not support a verdict based on it). In short, no due process violation occurs due to the failure to give an instruction on a defense where there was insufficient evidence as a matter of law to support such a charge. *See e.g., Neuman v. Rivers*, 125

F.3d 315, 323-24 (6th Cir.1997)(denial of writ upheld where district court properly found that there was insufficient evidence to warrant instructions on self defense and intoxication) and *Allen v. Morris*, 845 F.2d 610, 616-17 (6th Cir.1988)(failure to give instruction on self defense did not result in due process violation where evidence was insufficient to warrant instruction).

With respect to Brooks' argument regarding his entitlement to a jury instruction on accident on direct appeal, the Eighth District court of appeals held that the trial court properly did not instruct the jury on accident because the evidence did not warrant an accident instruction:

> Here, Brooks requested an instruction on accident, which was denied over trial counsel's objection. At trial, the State's theory of the case was that Brooks shot King during the fight. However, Brooks argued he did not shoot King and denied throughout that he even possessed a gun. Having denied shooting the victim or possessing a gun, Brooks is estopped from claiming it was an accident. Therefore, we cannot find that the trial court abused its discretion in failing to issue an instruction on accident because the evidence did not support such an instruction. Accordingly, this subclaim lacks merit.

*Brooks*, *supra* at *7.

Brooks claims that the state court's decision was contrary to, or amounts to an unreasonable application of the Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and he also cites the Sixth Circuit's decision in *Newton v. Million*, 349 F.3d 873 (6th Cir. 2003). The state appellate court did not base its resolution of this issue on precedent from the Supreme Court. Accordingly the federal review standard begins with whether the state decision is "contrary to" clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

In *Trombetta*, the Supreme Court held that held that the due process clause does not require that law enforcement agencies preserve breath samples of suspected drunk drivers in

order for results of breath-analysis tests to be admissible in criminal prosecutions.  In *Newton*, the Sixth Circuit recognized that the Supreme Court has "held that even if a defendant denies one or more elements of the crime, he is entitled to an affirmative defense instruction whenever there is sufficient evidence from which a reasonable jury could find for him on this issue." *Newton* at 878, *citing Mathews v. United States,* 485 U.S. 58, 63-64, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). The Sixth Circuit has further interpreted *Mathews* as "establishing a rule that 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor[.]'" *See Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002) (quoting *Mathews*, 485 U.S. at 63-64, 108 S.Ct. 883).  "Specifically, in *Taylor* this court stated in *dictum* that, in certain circumstances, "failure to instruct a jury on self-defense when the instruction has been requested and there is sufficient evidence to support such a charge violates a criminal defendant's rights under the due process clause." *Newton* at 878, quoting *Taylor*, 288 F.3d at 851.  In *Taylor*, the court reasoned that "the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *Id.* at 852.

In the *Ohio Jury Instructions*, an "accidental result" is defined as:

[O]ne that occurs unintentionally and without any design or purpose to bring it about. An accident is a mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.

4 *Ohio Jury Instructions* §411.01 (2006).  In the instant case, the Eighth District appellate court found that the defense theory that Brooks presented at trial–that he did not shoot King and that he did not possess a gun–estopped him from claiming the shooting was an accident.  *Brooks* at *7.  Although throughout trial, Brooks' position was that he did not possess or fire a gun, in

-14-

closing argument, Brooks' counsel essentially argued that the gun could have accidentally discharged when King was beating Brooks with a gun.  Counsel's arguments, however, are not evidence.  *Pang v. Minch*, 53 Ohio St.3d 186, 195, 559 N.E.2d 1313, 1322 (Ohio 1990); *and see* 4 *Ohio Jury Instructions* 405.10 (2006).  In light of the state appellate court's determination that King was shot and killed during a fight with Brooks, the state court's determination that an accident instruction was not supported by the evidence is reasonable.  *Cf. James v. Hudson*, No. 5:07cv2646, 2008 WL 4449614, *3, at **10-11 (N.D. Ohio Oct. 1, 2008) (citing cases)(writ of habeas corpus denied where trial counsel was not ineffective for failing to request jury instruction on the defense of accident because Ohio courts have held that an instruction on accident would have been inconsistent with defense counsel's chosen strategy that the shooting was a negligent homicide).   Therefore, because the evidence presented did not support the requested jury instruction on accident, and because that determination is based upon a state court's interpretation and application of state law, the jury instruction is not contrary to or an unreasonable application of federal law.  *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

**Ground Three: The trial court violated the 6th and 14th Amendment of the U.S. Constitution by giving a jury instruction of Voluntary Manslaughter at the request of the State and imposing an affirmative defense on Petitioner when the Petitioner denied shooting the victim.**

In his third claim for relief, Brooks again challenges the instructions of law given by the trial court to the jury.  Brooks asserts that the jury should not have been instructed on voluntary manslaughter because that instruction imposed a burden of proof upon him to show mitigation facts necessary to reduce the charge from murder to manslaughter.  Specifically, Brooks

emphasizes that he denied shooting the victim and that it was the prosecutor who requested the voluntary manslaughter instruction, not Brooks.[5]  Brooks claims that the instruction, which required him to prove that he acted with sudden passion or fit of rage altered the defense's theory of the case, which was that he did not shoot the victim.  Again, the state appellate court did not analyze this claim in terms of federal law.  Accordingly, the court must determine whether the state court decision is contrary to clearly established federal law.

Brooks relies upon *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508  (1975) and *Patterson v. New York*, 432 U.S. 197, 206-07, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).  Brooks is correct that "due process is offended when the instruction had the effect of shifting the prosecution's burden upon defendant.  *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91; *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Martin v. Ohio*, 480 U.S. 228, 233-34, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).  In *Martin*, the Supreme Court reviewed Ohio's self-defense procedure and instruction and found no constitutional infirmity in requiring the State to prove the elements of aggravated murder to be followed by justification that the actions were taken in self-defense.  *See Id.*, 480 U.S. at 231, 107 S.Ct. 1098.  In such case, Ohio did not "shift to the defendant the burden of disproving any element of the state's case." *Id.*, 480 U.S. at 234, 107 S.Ct. 1098.  Similarly, the voluntary manslaughter instruction,

_____

[5]Following a review of the record, it does not appear that Brooks' counsel objected to the voluntary manslaughter instruction.  This lack of objection would constitute a procedural bar to review under Ohio's contemporaneous objection rule.  This procedural basis for denial, however, was not utilized by the state courts or raised by respondent here.  Procedural default is a "defense" which the state is "obligated to raise and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" *Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 480, 139 L.Ed.2d 444 (1997), quoting *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996).  Consequently, the fact that respondent has failed to identify the basis for a procedural default and the fact that the state courts considered the merits of Brooks' argument on appeal precludes this Court from denying relief due to procedural default.

as explained below, does not violate that principle of law.

The state appellate court set forth Ohio law regarding the propriety of instructing a jury on voluntary manslaughter when a defendant is charged with murder:

> Voluntary manslaughter is an inferior degree of murder, because its elements are contained within the indicted offense, except for one or more additional mitigating elements.  Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser included offense is sought.

> Thus, a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter.

> When the evidence presented at trial regarding a lesser included offense or inferior-degree offense meets this test, the trial judge must instruct the jury on the lesser or inferior-degree offense.  On the other hand, when the evidence presented at trial does not meet this test, a charge on the lesser included or inferior-degree offense is not required.

*Brooks*, *supra* at *6 (citations omitted).

The first issue is whether there was sufficient evidence to warrant an instruction on voluntary manslaughter.  The state appellate court found ample evidence to support the trial court's instruction on voluntary manslaughter.  In reviewing Brooks' second assignment of error on direct appeal, which included this claim for relief, the state appellate court held as follows:

> In the instant case, the evidence presented warranted an instruction on voluntary manslaughter. All of the key eyewitnesses testified to the victim, King, fighting with Brooks. Sanford, Sanders, and Adams all testified that King and Brooks were grappling and struggling just prior to hearing a gunshot. Further, Brooks' written statement to the police confirmed that he and King were involved in a fight prior to the shooting. Because the killing occurred during a physical fight, an instruction on voluntary manslaughter was warranted. Based on the evidence presented, the trial court did not abuse its discretion by giving a jury instruction on voluntary manslaughter. Accordingly, this subclaim lacks merit.

*Brooks*, *supra* at *6 (internal citations omitted).

Federal courts must defer to the state court's factual finding.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004) ("A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption.") (citations omitted).  Brooks has not provided clear and convincing evidence to rebut the appellate court's factual finding.  Accepting that King died during a physical fight with Brooks, the trial court properly issued a voluntary manslaughter instruction.  *See State v. Hill*, 760 N.E.2d 555, 108 Ohio App.3d 279, 283 (Ohio App. 1996), citing State *v. Loudermill*, 2 Ohio St.2d 79, 206 N.E.2d 198, syllabus (Ohio 1965) ("When the evidence presented at trial going to a lesser included offense (or inferior-degree offense) meets this test, the trial judge must instruct the jury on the lesser (or inferior-degree) offense."). *See also State v. Shane*, 63 Ohio St.3d 630 (Ohio 1992) (Ohio Supreme Court commenting in *dicta* that "assault and battery [and] mutual combat ... are some of the classic voluntary manslaughter scenarios").

The Sixth Circuit has reviewed and upheld Ohio's scheme of requiring a defendant to prove the mitigating circumstances for voluntary manslaughter in the face of a due process challenge.  *Rhodes v. Brigano*, 91 F.3d 803 (6th Cir.1996), *cert. denied*, 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d 179 (1997).  The court found that the proof of sudden passion or sudden fit of rage would not necessarily negate the "purposeful" mens rea element of murder and found no due process violation.  *Id.* at 807-09.  As explained in *Rhodes*, the voluntary manslaughter statute is "poorly drafted and creates confusion."  However, "[t]he fact that the Ohio Supreme Court has chosen to characterize the 'mitigating circumstance' of sudden passion or sudden fit of

rage as something akin to an affirmative defense is constitutionally irrelevant.  The constitutional

inquiry, rather, is whether sudden passion or sudden fit of rage bears the necessary relationship

to an element of the offense of murder such that shifting the burden to the defendant on the issue

negates an element of the crime." *Id.* at 809.  The Sixth Circuit held that requiring the defendant

to prove sudden passion or fit of rage as a mitigating factor akin to an affirmative defense does

not violate a defendant's due process rights by unconstitutionally shifting the burden of proof to

him on an element of the offense of murder.  *Id.* at 808-811.

      The analysis does not end here.  What distinguishes Brooks' situation is that the trial

court agreed to give the voluntary manslaughter instruction at the *prosecution's* request, not

upon Brooks' request.  And yet, the court instructed the jury that Brooks had the burden of

proving sudden passion or fit of rage:

> [I]f you find that the State of Ohio failed to prove beyond a reasonable doubt all
> the essential elements of murder, then your verdict must be not guilty of that
> offense; and in that even, you will continue your deliberations to decide whether
> the State of Ohio has proved beyond a reasonable doubt all of the essential
> elements of the lesser included offense of voluntary manslaughter.

> If all of you are unable to agree on a verdict of either guilty or not guilty of
> murder, then you will continue your deliberations to decide whether the State of
> Ohio has proved beyond a reasonable doubt all of the essential elements of the
> lesser included offense of voluntary manslaughter.

> Voluntary manslaughter is knowingly causing the death of another, while the
> defendant is under the influence of sudden passion or in a sudden fit of rage,
> either of which is brought on by serious provocation occasioned by the victim that
> is reasonably sufficient to incite the defendant into using deadly force.

> Before you can find the defendant guilty of voluntary manslaughter, you must
> find beyond a reasonable doubt that on or about the 14th day of March, 2003, and
> in Cuyahoga County, Ohio, the defendant knowingly caused the death of Tyrone
> King.

****

That the **defendant has the burden** of proving by a preponderance of the evidence that he acted while under the influence of sudden passion or a sudden fit of rage, either of which is brought on by a serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force.

(Tr. at 1163-1165) (emphasis added).  Thus, the issues are whether it is a deprivation of due process to instruct the jury on voluntary manslaughter when the prosecution requests the instruction and whether the court improperly imposed the burden to prove mitigating facts of an inferior offense when the defendant did not request a jury instruction on the inferior offense.

The United States Supreme Court has not ruled on the issue of whether a court may instruct a jury on an inferior offense at the prosecution's request and which party has the burden to prove the mitigating circumstances.  *See, e.g., People v. Breverman*, 960 P.2d 1094 (California 1998) (reviewing United States Supreme Court precedent regarding lesser-included-offense instructions).  The general rule seems to be that it is proper to instruct a jury on a lesser-included offense at the prosecution's request.  *See* 23A *C.J.S. Criminal Law* §1828 (2008).

In *State v. Hill*, 108 Ohio App.3d 279, 670 N.E.2d 555 (Ohio App. 1996), Ohio's Eighth District Court of Appeals reversed a defendant's conviction for voluntary manslaughter because the trial court had improperly instructed the jury that the defendant had asserted a voluntary manslaughter defense and had the burden of proving that defense.  *Hill* held that because the prosecution, and not the defendant, had sought the instruction on voluntary manslaughter, the trial court should have instructed the jury that neither party had the burden of proof on the sudden passion or sudden fit of rage element.  *Id.* at 108 Ohio App.3d at 284, 670 N.E.2d at 559.[6]

---

[6]The *Hill* court held that it was proper for the trial court to instruct the jury on both murder and involuntary manslaughter, even over defendant's objection.  The error was in assigning the burden of proving that she acted with sudden passion or fit of rage to the defendant.  *Id.* at 108 Ohio App.3d at 282, 670 N.E.2d at 558.

When reviewing Brooks' claim, the Eighth District Court of Appeals did not cite its prior decision in *Hill* and arguably contradicted that case's holding.  This does not change the fact that the prosecution was required to prove the elements of the offense–that Brooks knowingly killed the victim–beyond a reasonable doubt.  Accordingly, while the state court's decision may be contrary to its own state court precedent, Brooks has not shown that the decision was contrary to clearly established Federal law.  Therefore, Brooks' third ground for relief is without merit.

### *CONCLUSION AND RECOMMENDATION*

Accordingly, petitioner has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding.  *See* 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that this application for habeas corpus be denied.

s/James S. Gallas
United States Magistrate Judge

Dated: February __, 2009

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

-21-